IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

ESTATE OF SYLVIA C. MINTER
and DENISE M. MINTER,
individually and as Administratrix
of the Estate of Sylvia C. Minter,

        Plaintiffs,

v.

                                CIVIL ACTION NO. 5:17-CV-185
                                (BAILEY)

BAYVIEW LOAN SERVICING, LLC
and CITIFINANCIAL, INC.,

        Defendants.

## ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAY

This matter is before this Court for consideration of CitiFinancial, Inc.'s Motion to Compel Arbitration and Stay Proceedings [Doc. 3], filed December 19, 2017. CitiFinancial requests that this Court: (1) order the plaintiffs to arbitrate all claims in the suit; and (2) stay the instant action pending resolution of arbitration. The matter is fully briefed and ripe for review.

## BACKGROUND

On or about February 19, 2004, Sylvia C. Minter ("Sylvia Minter") took out a loan from CitiFinancial, Inc. ("CitiFinancial") secured by a home mortgage on her home in Wheeling, West Virginia. During the loan transaction, Sylvia Minter entered into a "Disclosure Statement, Note and Security Agreement" ("loan agreement") with CitiFinancial, which affirmed that the "Borrower, Non-Obligor(s) (if any) and Lender have entered into a separate Arbitration Agreement on this date, the terms of which are incorporated and made a part of this Disclosure Statement, Note and Security Agreement

by this reference." [Doc. 3-1, p. 4]. This provision is titled "**ARBITRATION**," in capital letters and bolded font, and is set out from the rest of the loan agreement by a box.

The separate arbitration agreement referenced in the loan agreement, titled "**ARBITRATION AGREEMENT**," states that:

> **THIS ARBITRATION PROVISION PROVIDES THAT ALL DISPUTES BETWEEN BORROWER AND CERTAIN OTHER PERSONS ON THE ONE HAND AND LENDER AND CERTAIN OTHER PERSONS AND ENTITIES ON THE OTHER HAND, EXCEPT THOSE SPECIFIED BELOW, WILL BE RESOLVED BY MANDATORY, BINDING ARBITRATION. YOU THUS GIVE UP YOUR RIGHT TO GO TO COURT TO ASSERT OR DEFEND YOUR RIGHTS (EXCEPT FOR MATTERS THAT ARE EXCLUDED FROM ARBITRATION AS SPECIFIED BELOW). YOUR RIGHTS WILL BE DETERMINED BY A NEUTRAL ARBITRATOR AND NOT A JUDGE OR JURY. YOU ARE ENTITLED TO A FAIR HEARING, BUT THE ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT.**

[Doc. 3-2, p. 2]. Further, the arbitration agreement also states that either party to the agreement has the "absolute right to demand that any Claim be submitted to an arbitrator in accordance with this Arbitration Agreement." Id. The agreement defines "Claim" as "any case, controversy, dispute, tort, disagreement, lawsuit, or claim" between the parties, and specifically includes, in relevant part, any claims related to the arbitration agreement or the loan agreement, the scope of the arbitration agreement, "[a]ny past, present, or future insurance, service, or other product that is offered or purchased in connection with a Credit Transaction," "[f]raud or misrepresentation, including claims for failing to disclose material facts," "[a]ny federal or state statute or regulation, or any alleged violations thereof, including . . . lending laws," "[a]ny party's execution of this Agreement and/or willingness to be bound by its terms or provisions," and "[a]ny dispute about closing, servicing, collecting, or enforcing a Credit Transaction." Id.

2

The arbitration agreement contains a section detailing the specific claims that are exempt from arbitration, including "[a]ny action to the extent necessary to obtain a judicial order for the purpose of (a) effecting a foreclosure, transferring title being foreclosed . . . or (b) establishing, perfecting or clearing title, with respect to an interest in property."[1]

The arbitration agreement provides that, "[j]urisdictional and arbitrability disputes, including disputes over the existence, validity or scope of this Agreement under which arbitration is sought, shall be submitted to and ruled on by the arbitrator," and "[t]he arbitrator has the authority to determine jurisdiction and arbitrability prior to conducting a full hearing on the merits." [Doc. 3-2, p. 3]. Similarly, the arbitration agreement specifically defines "claim" to include "[t]he Note, this Agreement, or the enforceability, or the arbitrability of any Claim pursuant to this Agreement, including but not limited to the scope of this agreement and any defenses to enforcement of the Note or this Agreement." [Doc. 3-2, p. 2]. Finally, directly above the signature line on the final page, the arbitration agreement states:

> **Special Acknowledgments. You understand and acknowledge by signing Your name to this Agreement that (i) a court and/or jury will not hear or decide any Claim governed by this Agreement, (ii) the funding for Your Credit Transaction will come in whole or in part from sources outside this state, which will involve commerce within the meaning of the United States Arbitration Act, 9 U.S.C. §§ 1 et seq., as amended, (iii) discovery in an arbitration proceeding can be much more limited than in a court proceeding, and (iv) rights to appeal an arbitration award are very limited.**
>
> **READ THE ABOVE ARBITRATION AGREEMENT CAREFULLY, IT LIMITS**

---

[1] It is not disputed that the second exemption—which allows claims below a certain dollar amount to be brought in small claims court—is inapplicable, as the plaintiffs request well over $15,000.00 in aggregate, nor could the claims herein be asserted in small claims court.

3

**CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO OBTAIN REDRESS THROUGH COURT ACTION. BY SIGNING BELOW, YOU AGREE TO THE TERMS CONTAINED IN THIS AGREEMENT AND ACKNOWLEDGE THAT THIS DOCUMENT DID NOT CONTAIN ANY BLANK SPACES WHEN YOU SIGNED IT.**

[Doc. 3-2, p. 3]. Sylvia Minter signed the arbitration agreement directly under this provision and initialed the first page of the two-page agreement. Id.

On or about November 10, 2017, Denise M. Minter, in her personal capacity and as the Administratrix of Sylvia Minter's Estate, filed suit in the Circuit Court of Ohio County against defendants Bayview Loan Servicing, LLC ("Bayview") and CitiFinancial [Doc. 1-1]. Defendant CitiFinancial, with the consent of Bayview, timely removed the action from the Circuit Court of Ohio County to this Court on December 15, 2017 [Doc. 1]. The plaintiffs' claims arise from a home secured mortgage loan, and the Complaint alleges eleven counts:

1. Bad Faith;
2. Illegal Pursuit of Forfeiture;
3. Breach of Fiduciary Duty;
4. Unauthorized Charges;
5. Illegal Debt Collection Practices;
6. Fraud/Constructive Fraud;
7. Estoppel;
8. Unjust Enrichment;
9. Conversion;
10. Negligence; and
11. Outrage.

[Doc. 1-1]. The plaintiffs request relief in the form of punitive damages and a bevy of general damages, as well as a temporary restraining order, a preliminary injunction, and/or a permanent injunction against foreclosure of the property that had secured the mortgage.

On December 19, 2017, CitiFinancial filed the instant Motion to Compel Arbitration

4

and Stay Proceedings [Doc. 3], in which it moves this Court to enter an order directing the parties to arbitration and staying the instant action pending completion of arbitration. The matter is fully briefed and ripe for review.

## STANDARD

Section 2 of the Federal Arbitration Act ("FAA") provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 is the "primary substantive provision" of the FAA, while §§ 3 and 4 "provide[] two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).

Generally, "[t]he FAA reflects 'a liberal federal policy favoring arbitration agreements.'" *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (quoting *Moses H. Cone*, 460 U.S. at 24). Indeed, the FAA serves as "a response to hostility of American courts to the enforcement of arbitration agreements, a judicial disposition inherited from then-longstanding English practice." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001). Moreover, a court is required to "resolve 'any doubts concerning the scope of arbitrable issues . . . in favor of arbitration.'" *Hill v. PeopleSoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005) (quoting *Moses H. Cone*, 460 U.S. at 24–25); *see also Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir. 1989) ("Indeed, the heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of

5

arbitration.").

A party can compel arbitration by establishing: (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision which purports to cover the dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect, or refusal of the defendant to arbitrate the dispute. *See Adkins*, 303 F.3d at 500–01.

While the district courts are to apply "the federal substantive law of arbitrability, which governs all arbitration agreements encompassed by the FAA," the courts must also apply the ordinary state law principles regarding the formation of contracts, such as the "validity, revocability, or enforceability of contracts generally." *Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173, 179 (4th Cir. 2013) (citations omitted); *see also* 9 U.S.C. § 2 (arbitration agreements may be unenforceable "upon such grounds as exist at law or in equity of the revocation of any contract."); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). For example, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2" of the FAA. *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (citations omitted).

## **ANALYSIS**

In support of the motion, CitiFinancial argues that: (1) Sylvia Minter entered into a binding arbitration agreement, that must be enforced under the FAA; (2) the binding arbitration agreement includes a "delegation clause," which requires any disputes over the enforceability or arbitrability of any Claim to be determined by an arbitrator; and (3) under

6

the FAA, this action must be stayed pending arbitration [Doc. 4]. The plaintiffs argue that the claims they set forth are explicitly excluded from arbitration under the agreement because the claims arise in connection to the foreclosure activities of CitiFinancial, and that the arbitration agreement is unconscionable and thus not enforceable [Doc. 9].[2]

This Court must first consider whether CitiFinancial has met its burden to show that this Court should order the parties to arbitration under § 4 of the FAA, and whether the delegation provision requires that questions of validity and enforceability be submitted to the arbitrator. If the Court determines that the defendant has met its burden and the plaintiffs' claims should be submitted to arbitration, the Court must then stay the action pending resolution of arbitration.

## A. The Plaintiffs' Claims are Properly Directed to Arbitration

A district court must "engage in a limited review to ensure that the dispute is arbitrable—i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Glass v. Kidder Peabody & Co.*, 114 F.3d 446, 453 (4th Cir. 1997) (internal citations and quotation marks omitted). As noted above, for this Court to compel arbitration CitiFinancial must establish: "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the

---

[2] This Court will briefly address CitiFinancial's challenge to the timeliness of the plaintiffs' response to the Motion to Compel. The motion to compel was filed and served on counsel of record for the plaintiffs on December 19, 2017 [Doc. 3, p. 2]. As the defendant correctly noted, under Local Rule of Civil Procedure 7.02(b)(2), responses to non-summary judgment motions shall be filed and served within fourteen days from service of the motion. Therefore, the plaintiffs had until January 2, 2018 to file any response to the motion. The plaintiffs filed and served their Response in Opposition on January 2, 2018 [Doc. 9], and accordingly this Court will consider the plaintiffs' timely response.

7

transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [other party] to arbitrate the dispute." *Adkins*, 303 F.3d at 500–01 (internal quotation omitted). The plaintiffs only contest the second element, thus the remaining three elements will only be discussed briefly.

### 1. A Dispute Exists Between the Parties

The first element is satisfied, as a dispute exists between the parties, as evidenced by the plaintiffs' filing of this lawsuit in the Ohio County Circuit Court.

### 2. The Agreement Contains an Arbitration Provision that Covers the Disputes

The second element is also satisfied. In the Fourth Circuit, a court "may not deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is *not susceptible to an interpretation that covers the asserted dispute.*'" *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 92 (4th Cir. 1996) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)) (emphasis added).

The loan agreement [Doc. 3-1] signed by the parties contains a clear provision acknowledging the signing of and incorporation of the separate arbitration agreement. The arbitration agreement states, in clear terms and large, bolded font, that the parties agree to submit certain claims to arbitration [Doc. 3-2]. This agreement explicitly states that either party has the absolute right to demand that any "claim" be submitted for arbitration, and defines "claim" as "any case, controversy, dispute, tort, disagreement, lawsuit, or claim" between the parties. Id. The agreement specifically includes claims related to fraud or misrepresentation, violations of state laws, the enforceability or validity of the arbitration

agreement, and "[a]ny party's execution of this Agreement and/or willingness to be bound by its terms or provisions." Id.

The plaintiffs bring eleven claims against the defendants, which the plaintiffs conclusorily assert "are inextricably linked to the foreclosure activities of the Defendant and therefore are excluded from arbitration by the express language of the agreement." [Doc. 9, p. 4]. This, however, is not a persuasive argument, not only due to the plaintiffs' limited argument, but because the express language of the agreement counsels the opposite result:

> Claims Excluded from Arbitration. Neither You nor We may require the other to arbitrate the following types of matters: Any action to the extent necessary to *obtain a judicial order for the purpose of . . . effecting a foreclosure* or transferring title foreclosed.

Id. (emphasis added). By the express language of this provision, the plaintiffs' claims fall squarely outside the exclusions from arbitration, because they do not seek an order to *effect*[3] a foreclosure, but an action raising a number of claims related to the administration of a home-secured mortgage and a request for injunctive relief to *prevent* foreclosure.

Considering each individual claim the plaintiffs raise, it is clear that each is the kind of claim that the parties agreed to arbitrate. The first claim is for bad faith, and essentially alleges that the defendants have acted in bad faith with regards to maintenance of Sylvia Minter's credit life insurance, including an allegation that the plaintiffs do not believe that Sylvia Minter signed certain key documents. This count raises an arbitrable claim, as it is related to "[a]ny act or omission by any of [the lenders]," "[f]raud or misrepresentation," "[a]ny documents or instruments that contain information about any Credit Transaction,

---

[3] "To bring about; to make happen." *Effect*, Black's Law Dictionary (10th ed. 2014).

9

insurance, service, or product," and "[a]ny dispute about closing, servicing, collecting, or enforcing a Credit Transaction." [Doc. 3-2, p. 2].

The second claim is for illegal pursuit of forfeiture, and alleges that the defendants sought forfeiture of Sylvia Minter's home without pursuing other remedies at law, rather than properly treating foreclosure as a last resort. This claim is also included within the list of arbitrable claims, as it is related to "[a]ny dispute about closing, servicing, collecting, or enforcing a Credit Transaction." [Doc. 3-2, p. 2].

The third claim is for breach of fiduciary duty, and alleges that the defendants owed Sylvia Minter a fiduciary duty and breached this duty by pursuing foreclosure without verifying her account status. This claim is also included within the list of arbitrable claims, as it is related to "[a]ny dispute about closing, servicing, collecting, or enforcing a credit transaction." [Doc. 3-2, p. 2].

The fourth claim is for unauthorized charges under West Virginia law, and alleges that the defendants routinely assessed additional charges not authorized by the agreement or law during collection of the debt. This claim is also included within the list of arbitrable claims, as it is related to "[a]ny federal or state statute or regulation, or any alleged violation thereof, including without limitation insurance, usury, and lending laws." [Doc. 3-2, p. 2].

The fifth claim is for illegal debt collection practices under federal and West Virginia law, and alleges that the defendants did not credit or did not timely credit payments to the plaintiffs' account, engaged in fraudulent or unconscionable means to collect the alleged debt, and failed to timely demand payment or misrepresented the payment due. Again, this claim is arbitrable, as it is related to "[a]ny federal or state statute or regulation, or any alleged violation thereof." [Doc. 3-2, p. 2].

The sixth claim is for fraud/constructive fraud, and alleges that the defendants made false representations or concealed material facts during their transactions with Sylvia Minter. This claim is arbitrable as it is related to "[a]ny act or omission by any of [the lenders]," "[f]raud or misrepresentation, including claims for failing to disclose material facts," and "[a]ny dispute about closing, servicing, collecting, or enforcing a Credit Transaction." [Doc. 3-2, p. 2].

The seventh claim is for estoppel, and alleges that the defendants made a false representation or concealed material facts with regards to Sylvia Minter's loan, that the defendants had knowledge of the facts and intended for the unknowing plaintiffs to rely on these facts, and the plaintiffs did rely on the misrepresentation to their detriment. Again, this claim is arbitrable, as it is related to "[a]ny act or omission by any of [the lenders]," "[f]raud or misrepresentation, including claims for failing to disclose material facts," and "[a]ny dispute about closing, servicing, collecting, or enforcing a Credit Transaction." [Doc. 3-2, p. 2].

The eighth claim is for unjust enrichment, and alleges that the defendants demanded payment in excess of the amount actually due, and that the defendants have failed to comply with an additional agreement for credit life insurance to save the home from foreclosure, although they have accepted the payment. This claim is arbitrable, as it is related to "[a]ny past, present, or future insurance, service, or other product that is offered or purchased in connection with a Credit Transaction," "[a]ny act or omission by any of [the lenders]," "[a]ny dispute about closing, servicing, collecting, or enforcing a Credit Transaction," and "[a]ny party's execution of this Agreement and/or willingness to be bound by its terms and provisions." [Doc. 3-2, p. 2].

The ninth claim is for conversion, and alleges that the defendants have failed to provide an accounting of Sylvia Minter's loan payments but have made "distinct acts of dominion" over the money paid. This claim is also arbitrable, as it relates to "[a]ny dispute about closing, servicing, collecting, or enforcing a Credit Transaction," "[a]ny act or omission by any of [the lenders]," and "[a]ny documents or instruments that contain information about any Credit Transaction, insurance, service, or product." [Doc. 3-2, p. 2].

The tenth claim is for negligence, and alleges that the defendants negligently handled, processed, filed, and accounted Sylvia Minter's loan. Again, this claim is included within the list of arbitrable claims, as it is related to "[a]ny act or omission by any of [the lenders]" and "[a]ny dispute about closing, servicing, collecting, or enforcing a Credit Transaction." [Doc. 3-2, p. 2].

The eleventh claim is for outrage, and alleges that the defendant acted outrageously and with the intent to cause emotional distress. This claim is arbitrable, as it is related to "[a]ny act or omission by any of [the lenders]," "[a]ny dispute about closing, servicing, collecting, or enforcing a Credit Transaction," "[f]raud or misrepresentation, including claims for failing to disclose material facts," and "[a]ny federal or state statute or regulation, or any alleged violation thereof." [Doc. 3-2, p. 2].

Finally, the plaintiffs include an equitable complaint, and request a temporary restraining order, a preliminary injunction, a permanent injunction, and/or for the Court to set aside the foreclosure sale. The plaintiffs argue that their claims are excluded from arbitration by the express language of the agreement, because their claims arise in connection to CitiFinancial's foreclosure related activities. The mere fact that the plaintiffs seek equitable relief to *prevent* foreclosure does not automatically render the claims

12

exempt from arbitration. While the plaintiffs may ultimately seek to prevent foreclosure of the home, this is the ultimate goal of nearly any plaintiff in an action involving a home secured mortgage—the nature of the plaintiffs' claims, however, clearly fall within the various provisions of the arbitration agreement. Were this Court to determine that the relief the plaintiffs request governs whether arbitration agreements will be enforced as to otherwise contractually arbitrable claims, the Court would act against clearly established federal law and policy in favor of arbitration, by allowing the plaintiffs' prayer for relief to control rather than the clear language of the arbitration agreement itself.

As the plaintiffs have not identified any credible argument as to why the plaintiffs' claims are not expressly subject to arbitration as the defendant contends and because the clear language of the arbitration agreement includes the plaintiffs' claims, this element is met.

### 3. Relationship of the Transaction to Interstate Commerce

The third element has been met. In the context of the FAA, "interstate commerce" is broadly defined to coincide with the reach of the Commerce Clause and to "encompass[] a wider range of transactions than those actually 'in commerce'—that is, 'within the flow of interstate commerce.'" *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 57 (2003). The arbitration agreement that Sylvia Minter signed clearly states that the funding for the loan would come from outside of West Virginia, and thus the transaction involved interstate commerce within the meaning of the FAA.

### 4. Failure of Plaintiffs to Arbitrate the Dispute

Finally, the fourth element has been satisfied. Here, the plaintiffs failed to arbitrate the dispute by filing suit in the Ohio County Circuit Court rather than following the

13

procedures for arbitration under the agreement.

Accordingly, unless the plaintiffs can present a defense to the enforceability of the arbitration clause, this Court will order the claims submitted to arbitration.

*2. The Arbitrator Must Determine the Enforceability of the Agreement*

In asking this Court to disregard the arbitration agreement, the plaintiffs rely upon West Virginia unconscionability law to argue that the agreement as a whole was both procedurally and substantively unconscionable, considering the cost of arbitration, the relative positions of the parties, and a lack of mutuality. The plaintiffs also request an opportunity to conduct discovery into "whether the contract's formation was procedurally unconscionable." [Doc. 9, p. 5]. However, the arbitration agreement between the parties includes a "delegation provision," which provides that disputes over the enforceability or validity of the agreement are to be determined by an arbitrator before a hearing on the merits.

Section 2 of the FAA allows "agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." ***AT&T***, 131 S.Ct. at 1746 (quoting ***Doctor's Assocs.***, 517 U.S. at 687). "If a party challenges the validity under § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with the agreement under § 4." ***Rent-A-Center, West, Inc. v. Jackson***, 561 U.S. 63, 67 (2010). "[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular

14

controversy." *Id.* at 68–69 (discussing delegation provisions). A delegation provision "is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce." *Id.* at 67.

"[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Id.* at 70–71 (quoting ***Buckeye Check Cashing, Inc. v. Cardegna***, 546 U.S. 440, 445 (2006)). "[A] party's challenge to another provision of the contract, *or to the contract as a whole*, does not prevent a court from enforcing a specific agreement to arbitrate," *Id.* at 70 (emphasis added), nor does a challenge to the validity of an arbitration provision or the contract as a whole prevent a court from enforcing a specific agreement to submit questions of arbitrability or enforceability to an arbitrator. *Id.* at 71–72.

Unless the plaintiff "challenge[s] the delegation provision specifically, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Id.* at 72; *see also **Shumacher Homes of Circleville, Inc. v. Spencer***, 237 W.Va. 379, 387, 787 S.E.2d 650, 658 (2016) ("a delegation provision contained within an arbitration agreement must be enforced unless the party opposing arbitration specifically challenges the delegation provision."). The party challenging the delegation provision must specifically challenge the "validity, revocability or enforceability of the delegation provision itself." ***Shumacher***, 237 W.Va. at 387, 787 S.E.2d at 650; *see also **Ashworth v. Five Guys Operations, LLC***, 2016 WL 7422679, at *4 n.2 (S.D. W.Va. Dec. 22, 2016) (Chambers, J.) ("The delegation clause is susceptible to challenge based on common law contract defenses, such as incapacity, ambiguity,

15

coercion, fraud, or misrepresentation, but [plaintiff] failed to bring such challenges.").

In the arbitration agreement, the parties agreed that any claim within the meaning of the agreement was to be submitted to arbitration in lieu of the courts. The agreement expressly provides that such claims "include[], without limitation, anything related to . . . [t]he Note, this Agreement, or the enforceability, or the arbitrability of any Claim pursuant to this Agreement, including but not limited to the scope of this Agreement and any defenses to the enforcement of the Note or this Agreement." [Doc. 3-2, p. 2]. The agreement further provides, in relevant part, that "[j]urisdictional and arbitrability disputes, including disputes over the existence, validity, interpretation, or scope of this Agreement under which arbitration is sought, shall be submitted to and ruled on by the arbitrator." [Doc. 3-2, p. 3].

CitiFinancial explicitly raised the issue of the delegation clause in its Motion to Compel [Doc. 4, p. 9], and argued that the valid delegation clause requires any questions of enforceability or arbitrability of the plaintiffs' claims to be determined by an arbitrator, rather than by the courts. The plaintiffs filed a response that was entirely non-responsive to the issue of delegation, argued only as to the unconscionability of the agreement as a whole, because Sylvia Minter was not represented by an attorney and was an unsophisticated consumer. Where, as here and in *Rent-A-Center*, the plaintiffs' unconscionability arguments focused on the arbitration agreement as a whole and do not specifically or necessarily challenge the delegation provision, "the unchallenged delegation provision grant[s] the arbitrator exclusive authority to determine whether the arbitration agreement was unconscionable." *Minnieland Private Day School, Inc. v. Applied*

16

*Underwriters Captive Risk Assurance Co.*, 867 F.3d 449, 455 (4th Cir. 2017) (citing *Rent-A-Center*, 561 U.S. at 72–74); *see also Rent-A-Center*, 561 U.S. at 74 ("It may be that had Jackson challenged the delegation provision by arguing that these common procedures *as applied* to the delegation provision rendered *that provision* unconscionable, the challenge should have been considered by the court.").

Because the arbitration agreement has a clear, unmistakable delegation provision that delegates the determination of enforceability, arbitrability, and validity of the agreement to the arbitrator, and the plaintiffs have not challenged this provision, it is for the arbitrator, not this Court, to determine whether the arbitration agreement is unconscionable. Necessarily, because the question of unconscionability is properly before the arbitrator, any order of limited discovery in this matter would be inappropriate, as this is not the proper forum for the issue. As such, the Court finds that the plaintiffs' claims are properly referable to arbitration, and declines to grant discovery on the issue of unconscionability.

### B. The Action must be Stayed Pending Arbitration

"Under the FAA, courts must stay any suit 'referable to arbitration' under an arbitration agreement, where the court has determined that the agreement so provides, and one of the parties has sought to stay the action." *Noohi v. Toll Bros., Inc.*, 708 F.3d 599, 604 (4th Cir.), *cert. denied*, 134 S.Ct. 48 (2013); *see also* 9 U.S.C. § 3. As the Court has determined that the claims in this action are "referable to arbitration" under a valid arbitration agreement, the Court must grant CitiFinancial's request to stay the action.

### CONCLUSION

For the aforementioned reasons, this Court **GRANTS** CitiFinancial's Motion to

17

Compel Arbitration and Stay Proceedings **[Doc. 3]**. The Court **ORDERS** that the plaintiffs' claims be submitted to arbitration, pursuant to the parties' agreement to arbitrate and this Court's Order. Further, this Court **ORDERS** that this action is **STAYED** pending completion of arbitration, and **DIRECTS** the parties to notify this Court upon completion of arbitration.

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED:** January 29, 2018.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE